UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                                   **ORDER**
            Plaintiff,                                 23 CV 4781 (HG)(LB)

    -against-

MIRIAM ALTER,

            Defendant.
----------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

Before the Court is a discovery dispute in plaintiff United States of America's tax collection action against defendant Miriam Alter. The United States served deposition subpoenas on nonparties Rachel Biderman and Yaakov Biderman ("the Bidermans") that included requests for document production. ECF No. 28-1. The Bidermans asserted their Fifth Amendment privilege against producing any documents, and the United States moved to compel them to comply with the subpoenas' production requests. ECF No. 28. The Honorable Hector Gonzalez referred this dispute to me. ECF Order dated December 16, 2024.[1] The Bidermans now file support for their assertion of a Fifth Amendment privilege. ECF Nos. 49-50. For the reasons set forth below, the Court upholds the Bidermans' assertion of a Fifth Amendment privilege, and the Bidermans shall not be required to produce more documents in response to the United States' subpoenas at ECF No. 28-1.

## BACKGROUND

The Court assumes familiarity with the procedural history of this case, which is recounted here in a limited manner to explain this decision. The United States alleges that defendant Miriam Alter owes over $9 million in unpaid taxes, interest, and civil fraud penalties for 2002 through

---

[1] Judge Gonzalez later referred the case to me for all pretrial purposes. ECF Order dated March 4, 2025.

2007. Compl., ECF No. 1 ¶ 18. Defendant is the daughter of the late Grand Rabbi Menashe Klein, whose family owns several tax-exempt religious organizations (which the United States collectively refers to as the "Klein Organizations"). Id. ¶¶ 3-4. These organizations operate a religious school and synagogue in Brooklyn. Id. ¶ 4. The United States alleges that plaintiff failed to pay taxes on funds that she received from the Klein Organizations. Id. ¶¶ 7, 18. In particular, the United States alleges that the Klein Organizations gave defendant money to purchase a house at 1693 49th Street in Brooklyn (the "Alter House"). Id. ¶¶ 7-8.

Rachel and Yaakov Biderman are defendant's sister and brother-in-law, respectively. ECF No. 28 at 1. On May 23, 2024, the Bidermans waived service of the deposition subpoenas. Id. The subpoenas included requests for several categories of documents related to the Alter House, the Bidermans' correspondence with defendant, and funds transferred from the Bidermans or the Klein Organizations to defendant. ECF No. 28-1 at 6-7, 13-14. The Bidermans asserted a Fifth Amendment privilege against producing any documents. ECF No. 28 at 1.[2]

On December 9, 2024, the United States moved to compel the Bidermans to comply with the subpoenas' document requests. Id. As fact discovery had closed on November 1, 2024, the Court directed the United States to first move to reopen discovery. ECF Order dated December 19, 2024. The United States so moved. ECF Nos. 30-31, 33 (motion and oppositions). At a conference on January 14, 2025, the Court granted in part the United States' motion to reopen discovery for the limited purpose of seeking the production of documents requested in the Bidermans' subpoenas. ECF Order dated January 14, 2025.

---

[2] The Bidermans also asserted a Fifth Amendment privilege against answering most questions at their depositions. ECF No. 36 at 5:23-6:2. However, the United States did not timely dispute this Fifth Amendment assertion. See ECF No. 28 (disputing only the Bidermans' refusal to produce documents).

2

The Court also granted in part plaintiff's motion to compel. The Court ordered the Bidermans to produce responsive documents from January 1, 1999 to December 31, 2008 for all requests in Yaakov Biderman's subpoena and for requests one through ten in Rachel Biderman's subpoena.[3] The Court also granted the motion to compel as to request eleven in Rachel Biderman's subpoena, but limited this request to five documents, in their original form, containing true and accurate exemplars of her signature from 2002 to the present. Id. At the January 14, 2025 conference, the Court stated that the Bidermans need not produce documents that were in the binder of discovery shown to the Bidermans at their depositions. Trans., ECF No. 36 at 51:22-52:4. The Court ordered the Bidermans to file a letter by January 24, 2025 stating whether they intended to assert a Fifth Amendment privilege as to any responsive documents and granted them leave to file an *ex parte* submission in support of their position. Otherwise, the Court ordered the Bidermans to produce responsive documents to the United States by January 31, 2025. ECF Order dated January 14, 2025.

On January 23, 2025, the Bidermans stated that they no longer wished to assert a Fifth Amendment privilege as to the Court's order on the United States' motion to compel. ECF No. 37. On February 28, 2025, the United States informed the Court that the Bidermans had produced no documents aside from exemplars of Rachel Biderman's signature. ECF No. 40. Accordingly, the United States moved for an order requiring the Bidermans to show cause why they should not be held in contempt of the Court's discovery order pursuant to Fed. R. Civ. P. 45(g). Id. In response, the Bidermans stated that "they had no [other responsive documents] that are not already in the Government's position," and asserted a Fifth Amendment privilege against providing further details. ECF No. 43. The Court denied the United States' Rule 45(g) motion without prejudice and

---

[3] The subpoenas limited some document requests to the "Relevant Time Period" of January 1, 1999 to December 31, 2008, but other requests sought documents from 2002 to the present. ECF No. 28-1 at 13-14.


again granted the Bidermans leave to file support for their assertion of the Fifth Amendment *ex parte*. ECF Order dated March 13, 2025. The Bidermans filed support for their position *ex parte* and publicly filed a redacted version of their submission. ECF Nos. 49-50. The United States responded to the Bidermans' submission. ECF No. 51.

## DISCUSSION

### I.   Standard of Review

The United States Constitution's Fifth Amendment provides a privilege against compelled self-incrimination. This privilege is "broadly construed to serve the right it was designed to protect," and can "be asserted in any civil, criminal or administrative proceeding." Estate of Fisher v. Comm'r of Internal Revenue, 905 F.2d 645, 648 (2d Cir. 1990). The Fifth Amendment may be asserted "whenever a witness reasonably believes that his testimony could 'furnish a link in the chain of evidence needed to prosecute' him for a crime." Id. (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)). "To qualify for the Fifth Amendment privilege, a communication must be (1) testimonial; (2) incriminating; and (3) compelled." Benthos Master Fund, Ltd. v. Etra, No. 20-CV-3384 (VEC), 2023 WL 4350594, at *8 (S.D.N.Y. July 5, 2023). As such, the Fifth Amendment generally does not "protect the contents of voluntarily prepared documents." United States v. Cianciulli, No. M18304 (RMB)(THK), 2002 WL 1484396, at *2 (S.D.N.Y. July 10, 2002). However, the "act of production" doctrine recognizes that a Fifth Amendment privilege against producing documents could apply if doing so "could implicitly communicate incriminating facts, such as the admission that 'papers existed, were in [the producing party's] possession or control, and were authentic." Id. (quoting United States v. Hubbell, 530 U.S. 27, 36-37 (2000)) (alteration in original).

For the Fifth Amendment privilege to apply, "[t]he danger of self-incrimination must be real, not remote or speculative." Estate of Fisher, 905 F.2d at 649. If "the danger is not readily apparent from the implications of the [document request] or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." Id. A Fifth Amendment privilege cannot be asserted on a blanket basis. Sec. & Exch. Comm'n v. Pence, 323 F.R.D. 179, 188 (S.D.N.Y. 2017). Rather, the Court must conduct a "particularized inquiry" into whether the Fifth Amendment "assertion was founded on a reasonable fear of prosecution." Id. (quoting United States v. Bowe, 698 F.2d 560, 566 (2d Cir. 1983)).

The individual asserting the privilege need not show an actual likelihood that they will be prosecuted. Estate of Fisher, 905 F.2d at 649. However, "a witness may not assert the privilege with respect to incriminating testimony for which 'an absolute bar to subsequent prosecution' exists." Pence, 323 F.R.D. at 190 (quoting Estate of Fisher, 905 F.2d at 651). The privilege may be asserted if "it cannot be concluded with certainty that all relevant statute[s] of limitations have run." Pence, 323 F.R.D. at 190 (citation omitted) (alteration in original).

A witness asserting the Fifth Amendment should be "afforded an opportunity to explain his claim of constitutional privilege" in a manner that does not require the witness to "surrender 'the very protection that the privilege is designed to guarantee.'" Estate of Fisher, 905 F.2d at 650 (quoting Hoffman, 341 U.S. at 486). Accordingly, Courts may review *ex parte* submissions to determine whether an assertion of a Fifth Amendment privilege was proper. Benthos Master Fund, Ltd., 2023 WL 4350594 at *8 n.18.

**II.     The Bidermans Did Not Waive Their Fifth Amendment Privilege**

The United States argues that the Bidermans waived any Fifth Amendment privilege. A Fifth Amendment privilege "may be deemed to have been waived, including by litigation conduct

5

short of a 'knowing and intelligent waiver.'" In re DG Acquisition Corp., 151 F.3d 75, 80 (2d Cir. 1998) (citations omitted). However, waiver "is not lightly to be inferred," and courts "must indulge every reasonable presumption against waiver." Id. (quoting Emspak v. United States, 349 U.S. 190, 196, 198 (1955)). Specifically, "the Second Circuit has held that the Fifth Amendment privilege is not necessarily waived by failure to object to a subpoena in a timely fashion." SPV-LS, LLS v. Herbst, No. 16-MC-197, 2016 WL 8711738, at *2 (S.D.N.Y. June 3, 2016) (citing In re DG Acquisition Corp., 151 F.3d at 81-82) (finding no waiver even though "[d]efendant egregiously ignored his discovery obligations by failing to object or otherwise respond to the subpoena").

First, the United States contends that the Bidermans waived any objection to the subpoena's document requests by failing to respond or object by June 5, 2024. ECF No. 28 at 1-2; ECF No. 51 at 5 n.1 (preserving argument). However, the record does not reflect that June 5, 2024 was the deadline for any objection. The subpoenas, served May 23, 2024, noticed depositions for June 26 and June 27 and stated that the Bidermans "must also bring with you to the deposition" certain documents. ECF No. 28-1 at 2. The subpoenas provided that "[a]lternatively, you can comply with this subpoena by uploading the requested documents on or before June 5, 2024" to an online file sharing service. Id. at 5. The depositions were adjourned when the Bidermans "retained different counsel because of a conflict of interest with their prior counsel," and on August 18, 2024, the Bidermans first asserted a Fifth Amendment privilege against the document requests. ECF No. 28 at 1. The depositions were ultimately held on September 18 and November 4, 2024. Id. Accordingly, the record does not reflect that the Bidermans' document production was due June 5, 2024; that was the date by which the Bidermans could upload documents, but the subpoenas also stated that they could comply by bringing documents to their depositions. Moreover, the

6

Bidermans' conduct does not suggest that they waived any Fifth Amendment privilege by ignoring their discovery obligations or otherwise.

As discussed above, the Bidermans declined to assert a Fifth Amendment privilege when the Court allowed them to do so after the January 14, 2025 conference. However, the Court does not find that they waived their Fifth Amendment privilege by doing so. At that time, the Bidermans believed that "the Court had indicated at the January 14, 2025 conference that the Bidermans did not need to produce any responsive documents that duplicated documents already in the Government's possession in this matter." ECF No. 43 at 2. As such, the Bidermans believed they could comply with the Court's order on the United States' motion to compel without producing any documents beyond exemplars of Rachel Biderman's signature, obviating the need to assert a Fifth Amendment privilege. Id. While the Bidermans inaccurately interpreted the Court's order, their interpretation was not in bad faith.[4] Drawing all reasonable presumptions against waiver, the Court finds that the Bidermans' January 23, 2025 decision to not assert a Fifth Amendment privilege does not preclude them from asserting their Fifth Amendment privilege now.

### III.   The Court Upholds the Bidermans' Assertion of Fifth Amendment Privilege

Based on the circumstances of the case and the Bidermans' *ex parte* submission, the Court upholds the Bidermans' assertion of their Fifth Amendment privilege. The Bidermans have demonstrated a reasonable fear that producing documents responsive to the Court's January 14, 2025 Order "could furnish a link in the chain of evidence needed to prosecute [them] in a criminal

---

[4] The United States brought a binder of documents to the Bidermans' depositions. At the January 14, 2025 conference granting the United States' motion to compel, the Court first stated "I don't care if the Bidermans have copies of things that are in the [deposition] binder as long as it's communicated to the government that we're not re-producing exhibit whatever that they were going to be shown. We have a copy of it but we're not re-producing it." Trans., ECF No. 36 at 51:22-52:2. The Court later stated, "I'm minimizing the burden on your client by saying they don't need to re-produce documents that have already been given to the [government]." Id. at 55:19-22. The United States claims that it does not trust the Bidermans' determination that any responsive documents the Bidermans possess are duplicative of documents the United States has obtained through other discovery. ECF No. 43 at 2 n.2. Based on the Bidermans' *ex parte* submission, the Court finds no reason to doubt the Bidermans' determination.

action." Gov't Emps. Ins. Co. v. Kalitenko, No. 22-CV-3804 (ARR)(RLM), 2023 WL 112803, at *5 (E.D.N.Y. Jan. 5, 2023) (collecting cases). Furthermore, the Court cannot "conclude[] with certainty that all relevant statute[s] of limitations have run" for possible criminal prosecutions. Sec. & Exch. Comm'n v. Pence, 323 F.R.D. 179, 190 (S.D.N.Y. 2017) (citation omitted).

As the Bidermans describe, "[t]he context of this litigation underscores the potential risk faced by the Bidermans . . . ." ECF No. 50 at 1. The United States' case centers on the Alter House, which the United States alleges defendant purchased with unreported funds given to her by the Klein Organizations. Compl., ECF No. 1 ¶ 7. Defendant avers that she is only the record owner of the house and has never resided in it. Am. Answer, ECF No. 23 at 2 ¶ 7, 6 ¶ 3. Meanwhile, the United States alleges that the Bidermans live in the Alter House. ECF No. 51 at 4.[5] In her initial answer to the complaint, defendant stated that she gave "one of her sisters" permission to apply for a mortgage loan for the house in her name so one of the Klein Organizations "could purchase the subject property to use as its synagogue." ECF No. 7 at 6 ¶ 4. Defendant later amended her answer to remove this statement and instead state that she gave her now deceased father permission "to use her name to build a new synagogue." ECF No. 23 at 6 ¶ 4. Finally, defendant denies that she prepared or filed the tax returns at issue or authorized anyone else to do so on her behalf. ECF No. 23 at 2 ¶ 11.

The United States argues that its "[c]omplaint does not allege that anyone forged anything." ECF No. 51 at 2. However, that is irrelevant to the Bidermans' Fifth Amendment privilege. The Bidermans need not show that the government intends to prosecute them, and *a fortiori* they need not show that the government has alleged wrongdoing by them in the instant case to assert their Fifth Amendment privilege. See Estate of Fisher v. Comm'r of Internal Revenue, 905 F.2d 645,

---

[5] "In their depositions, [the Bidermans] invoked the Fifth Amendment when asked where they currently live." ECF No. 51 at 4 n.3.

649 (2d Cir. 1990) (finding that the lower court erred in relying "upon the Criminal Investigation Division's assurances that Fisher was not currently being investigated"). Rather, the circumstances surrounding and the Bidermans' connection to the Alter House are relevant because they reflect that responding to the government's document requests "might be dangerous because injurious disclosure could result." Id. (quoting Hoffman v. United States, 341 U.S. 479, 486-87 (1951)). Moreover, the Court has made "a particularized determination" that producing responsive documents "could provide 'a link in the chain of evidence' necessary to prosecute [them] for a crime." Id.

Finally, the "foregone conclusion" doctrine does not overcome the Bidermans' Fifth Amendment privilege. The "foregone conclusion" doctrine is an exception to the act of production privilege. To overcome the privilege, the United States must establish its knowledge of three elements with reasonable particularity: "(1) existence of the documents, (2) the taxpayer's possession or control of the documents and (3) the authenticity of the documents." United States v. Fridman, 974 F.3d 163, 174 (2d Cir. 2020) (citation omitted). The United States claims that the Bidermans live at the Alter House and therefore "must have some level of control over" documents related to the Alter House. ECF No. 51 at 4. Furthermore, the United States argues that "documents must exist about how the property is used, such as a lease or an agreement outlining the terms of use and payment of utility bills." Id.

However, the United States ignores the "critical temporal requirement" of the foregone conclusion inquiry. Fridman, 974 F.3d at 175-76. The Bidermans presently assert a Fifth Amendment privilege only as to documents from 1999 through 2008. The United States must establish both "the existence, [the Bidermans'] control, and authenticity" of the documents at a prior point in time *and* that "it is a foregone conclusion that these documents remained in [the

9

Bidermans'] control through the issuance of the [subpoenas]." Id. at 176 (quoting United States v. Greenfield, 831 F.3d 106, 119, 123 (2d Cir. 2016)). The United States has not made either showing. First, assuming the Bidermans currently live at the Alter House, this does not establish that they have documents the government seeks regarding the house from over 15 years ago. Second, even if the Bidermans lived at the house prior to 2008 and had control over responsive documents from that time period, the United States has not established that the Bidermans would have retained those documents. The United States' general assertions do not meet its burden of establishing that the foregone conclusion doctrine applies here.

## CONCLUSION

For the reasons stated above, the Court upholds the Bidermans' assertion of a Fifth Amendment privilege. The Bidermans shall not be required to produce any further documents responsive to the United States' subpoenas at ECF No. 28-1 and the Court's Order dated January 14, 2025. The deadline to complete fact discovery was April 1, 2025, and the parties state that "there will not be any expert discovery in this case." ECF No. 53. Accordingly, discovery is closed. The parties shall file any pre-motion letter in accordance with Judge Gonzalez's Order dated April 8, 2025.

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: April 14, 2025
      Brooklyn, New York